**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Jeremy Daniel Bach, | ) | No. CV 09-1914-PHX-JAT |
|---|---|---|
| Petitioner, | ) | **ORDER** |
| vs. | ) | |
| Charles L. Ryan, | ) | |
| Respondent. | ) | |

On August 8, 2012, the Magistrate Judge to whom this case was assigned issued a Report and Recommendation (Doc. 50) recommended that the Petition in this case be denied. On August 27, 2012, Petitioner filed objections to the R&R (Doc. 53).

**I.     Factual Background**

The R&R at pages 3-11 details the factual background of this case.  The Court adopts that background.[1]  In summary, Petitioner was convicted, following a jury trial, of second degree murder.  R&R at 1. Specifically, Petitioner was convicted of shooting and killing a 13 year old, Brad.  *Id*. at 3.  After shooting Brad on November 10, 1995, Petitioner failed to render aid, failed to call for aid, concealed the body (which was never recovered), cleaned the area where Brad was shot, and denied knowing Brad's whereabouts until February 17, 1996.  *Id*. at 3-4.  At the time of the offense, Petitioner was 13 years old.  *Id*. at 1.

---

[1]  Petitioner's objections in footnote 5 are overruled.

## II.      Legal Standard - Statute of Limitations

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d), created a one-year statute of limitations from when a conviction became final to file a petition for writ of habeas corpus.  Petitioner concedes that his Petition in this case, which was filed in 2009, is outside this statute of limitations.[2]

Petitioner argues that under the exception to the statute of limitations for actual innocence recognized in *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011) (en banc), he is entitled to "gateway" around the statute of limitations.  The *Lee* Court adopted the actual innocence gateway previously recognized in *Schlup v. Delo,* 513 U.S. 298, 314-15 (1995).[3]

For Petitioner to meet the actual innocence gateway of *Schlup*, the Court must determine, "how reasonable jurors would react to the overall, newly supplemented record," and whether, "it is more likely than not that no reasonable juror would have convicted him." *Lee*, 653 F.3d at 945 (quoting *House v. Bell*, 547 U.S. 518, 538 (2006) and *Schlup*, 513 U.S. at 327).  Here, Petitioner argues that he can meet the actual innocence gateway based on: 1) the insufficiency of the evidence at trial, or alternatively, 2) new evidence that he obtained after trial.

### A.      Insufficiency of the Evidence

Petitioner argues that he can show actual innocence based solely on the evidence used to convict him at his original trial.  The R&R rejects this theory finding that the gateway around the statute of limitations requires "new" evidence.  R&R at 15-16.  Petitioner objects

---

[2] Petitioner would have been entitled to statutory tolling for any period of time that he had a properly filed proceeding pending in state court. *See* 28 U.S.C. § 2244(d)(2); R&R at 12, n.1.  Petitioner concedes that his Petition is untimely even after applying statutory tolling.  Also, in some circumstances a petitioner is entitled to equitable tolling. *Holland v. Florida*, 130 S.Ct. 2549, 2560-63 (2010).  The R&R concluded that Petitioner was not entitled to equitable tolling because he had not been exercising due diligence. R&R at 13-14. Petitioner did not object to this conclusion and the Court adopts it.

[3] *Schlup* recognized an actual innocence gateway for procedurally defaulted claims. *Lee*, 653 F.3d at 934.

1    to the legal conclusion that "new" evidence is required to make the actual innocence
2    showing.  The Court agrees with the R&R and overrules the objection.

3         Specifically, *Lee* states: "*Schlup* requires a petitioner, "to support his allegations of
4    constitutional error with new reliable evidence — whether it be exculpatory scientific
5    evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not
6    presented at trial.'" 653 F.3d at 938 (quoting *Schlup*, 513 U.S. at 324).  Stated another way,
7    "...to pass through the *Schlup* gateway, a petitioner must show *reliable* evidence of his
8    innocence that was not, and could not have been, presented at trial." *Lee*, 653 F.3d at 945
9    (C.J. Kozinski concurring).  The Court finds that these statements of what a petitioner must
10   show foreclosure Petitioner's argument that no "new" evidence in required.  To hold
11   otherwise would allow any theory of innocence argued *at trial* to later gateway around the
12   statute of limitations.  The AEDPA, which created a statute of limitations, intended to avoid
13   just this result.  Accordingly, the Court will not consider Petitioner's insufficiency of the
14   evidence claim as a basis for finding actual innocence.[4]

15        **B.    New Evidence**

16        Alternatively, Petitioner argues that he has new evidence that is sufficient to pass
17   through the *Schlup* gateway.  Before the Court turns to this evidence, however, the Court will
18   consider the R&R's suggestion that this claim fails to meet a diligence requirement.

19             **1.    Diligence**

20        In footnote 2 of the R&R the Magistrate Judge notes that in footnote 9 of the opinion,
21   the *Lee* court did note foreclose a requirement that a petitioner be acting diligently to qualify
22   for the *Schlup* gateway.  R&R at 13, n.2.  However, the *Lee* court expressly declined to
23   decide this issue.  *Id.* (quoting *Lee*, 653 F.3d at 934, n9).  Petitioner objects to the legal
24   conclusion that he is required to show diligence to pass through the *Schlup* gateway.

25        Here, determining whether Petitioner is required to show diligence impacts whether
26

27        [4]  Moreover, even if the Court were to consider the merits of this claim, the Court
     finds there was sufficient evidence at trial to convict Petitioner and adopts the R&R on this
28   claim.  R&R at 15-25.  The Court overrules Petitioner's objections to this recommendation.

1    Petitioner can meet the *Schlup* gateway.  Petitioner's trial was in 1997.  R&R at 1.

2    Petitioner's conviction became final for purposes of the AEDPA's statute of limitations in

3    2001.  R&R at 12, n.1.  Petitioner filed this habeas Petition in 2009.

4           Petitioner's new evidence consists of two affidavits obtained in 2006.  One affidavit

5    is from Susan Downs Parrish, Ph.D, who met and interviewed Petitioner in 1997 and testified

6    at his sentencing.  R&R at 25.  The other affidavit is from Mark Wellek, M.D., who has

7    never met with nor interviewed Petitioner.  R&R at 26.  Both affidavits involve the doctors'

8    expert opinions on whether Petitioner would have been able to form the necessary *mens rea*

9    to be guilty.  R&R at 25-26.

10          The diligence inquiry in this case has two time frames: 1) how was Petitioner diligent

11   in not obtaining these expert medical opinions between his trial and 2006; and 2) how was

12   Petitioner diligent in obtaining these expert medical opinions in 2006, but not filing his

13   habeas Petition until 2009.  As note above, Petitioner objects to any diligence requirement

14   being part of the *Schlup*-statute-of-limitations gateway.  Doc. 53 at 2.  In making this

15   objection, Petitioner relies on cases finding diligence is not required to meet the *Schlup*-

16   procedural-default gateway.  Doc. 41 at 5 (citing *Souter v. Jones*, 395 F.3d 577, 601, n. 16

17   (6th Cir. 2005); *Lopez v. Trani*, 628 F.3d 1228, 1230-31 (10th Cir. 2010)).  Petitioner then

18   states that if such a requirement were imposed, it would require an evidentiary hearing.  Doc.

19   41 at 6, n.5.

20          In declining to adopt a diligence requirement, the Sixth Circuit stated:

21          We decline to adopt the approach outlined by the Eighth Circuit in *Flanders*,
            which imposes a requirement that the petitioner show "action or inaction on
22          the part of the respondent that prevented him from discovering the relevant
            facts in a timely fashion or ... that a reasonably diligent petitioner could not
23          have discovered these facts in time to file a petition within the period of
            limitations." 299 F.3d at 978. The requirement imposed by the Eighth Circuit
24          has the effect of reducing actual innocence claims to only those which are
            timely under § 2244(d)(1)(D), the new evidence provision. That provision
25          states the one-year limitations period begins to run from the date on which the
            new factual predicate "could have been discovered through the exercise of due
26          diligence." § 2244(d)(1)(D). Presumably, if the respondent is preventing the
            discovery of evidence as required by *Flanders*, that evidence could not have
27          been discovered through the exercise of due diligence, and therefore, the
            limitations period would not begin to run until it becomes available. The
28          *Flanders* exception would not cover situations as in this case where the

1     petitioner had collected sufficient evidence to demonstrate a credible claim of
2     actual innocence but failed to file within the one-year limitations period.

3   *Souter*, 395 F.3d at 601, n. 16.

4           As recounted by the Sixth Circuit, the AEDPA has an exception to the statute of
5   limitations for newly discovered evidence; which is one year from when the new evidence
6   could have been discovered.  Thus, the Sixth Circuit decided that the *Schlup* gateway would
7   be defined as something more than the exception to the statute of limitations already
8   provided by the AEDPA.

9           This case raises strong policy concerns for having a diligence requirement.
10  Specifically, one of these doctors has been known to petitioner and testified on his behalf in
11  1997 — 12 years before he filed his habeas petition.  The other doctor offered testimony on
12  his behalf, by way of an affidavit, three years before his petition.  However, the Sixth Circuit
13  correctly notes that the AEDPA already has an exception for newly discovered evidence, so
14  for the *Schlup* statute of limitations gateway to be meaningful, it would have to be broader
15  than the AEDPA's exception.  Because the Ninth Circuit Court of Appeals did not impose
16  a mandatory diligence requirement in *Lee*, and given the reasoning of the Sixth Circuit case,
17  the Court will sustain Petitioner's objection that he is not required to make a showing of
18  diligence in discovering and/or presenting to the Court his "new" evidence.[5]

19

20

21  ───────────────

22          [5] If diligence were required, Petitioner would have failed to meet it.  Petitioner makes
    no showing that he was diligent in bringing this claim to the federal court from when he
23  actually obtained the evidence in 2006, nor from when he could have discovered it.  Further,
    Petitioner arguing that he would need an evidentiary hearing on this point, without any facts,
24  is inadequate to qualify for an evidentiary hearing.  For example, "[a] habeas petitioner ...
    should receive an evidentiary hearing when he makes 'a good-faith allegation that would, if
25  true, entitle him to equitable tolling.' " *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir.2006)
    (quoting *Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir.2003)).  Here, Petitioner did not
26  allege any facts that would entitle him to a hearing, and therefore, the Court would consider
    this record wherein no showing has been made that Petitioner exercised diligence in bringing
27  this claim.
28

1            **2.**     **Actual Innocence Gateway**

2              **a.**    **Definition of "New" Evidence**

3       As discussed above, Petitioner has two affidavits that he claims qualify as new

4 evidence and are sufficient to allow him to pass through the *Schlup* gateway.  Although the

5 Court has rejected a diligence requirement in the time between Petitioner's trial and

6 Petitioner bringing this habeas petition, the Court nonetheless will consider Chief Judge

7 Kozinski's definition of "new" evidence.  Specifically, Chief Judge Kozinski's requires that

8 the new evidence be evidence that the petitioner could not have presented at his original trial.

9 *Lee*, 653 F.3d at 945 (C.J. Kozinski concurring).

10       In this case, Petitioner's first affidavit is from a doctor who met with him in 1997 and

11 testified on his behalf at sentencing.  R&R at 25.  Thus, this doctor was available to offer her

12 opinions at the time of Petitioner's trial, and in fact offered them at sentencing.  The second

13 affidavit is from a doctor who has never examined Petitioner, but offered his opinion

14 generally about the mental functioning of a person of Petitioner's age at the time of the

15 offense.  R&R at 26.

16       The Court finds that neither of these affidavits fall within the definition of "new"

17 evidence.  They are not "scientific evidence, trustworthy eyewitness accounts, or critical

18 physical evidence."  *See Lee,* 653 F.3d at 938.  Instead, they are expert opinions regarding

19 Petitioner's capacity to form the necessary mens rea to commit the crime of which he was

20 convicted.  Petitioner has offered no argument that these opinions were not available at the

21 time of trial.  Accordingly, the Court finds that what Petitioner offers as "new" evidence does

22 not qualify as "new" evidence as the term is used in *Lee*.  *See Lee*, 653 F.3d at 945 (C.J.

23 Kozinski concurring).  Therefore, the Petition in this case will be denied because it is barred

24 by the statute of limitations and does not qualify for the *Schlup* gateway around the statute

25 of limitations.

26              **b.**    **Is it more likely than not that no reasonable juror would**
                            **have convicted Petitioner?**

27

28       Alternatively, even if this Court considers the substance of the affidavits, Petitioner

1   fails to show that "it is more likely than not that no reasonable juror would have convicted

2   him." *See Lee*, 653 F.3d at 945; R&R at 26-27.  The testimony in the affidavits fails to meet

3   the this standard for several reasons.  First, both doctors were provided with largely

4   Petitioner's version of the facts (including that the shooting was an "accident" that occurred

5   while "playing"), rather than the full trial record.  R&R at 26-27.[6]  Second, the doctor that

6   examined Petitioner equivocally said that he "probably" would not have consciously

7   disregarded a grave risk that taking the guns, playing with the guns and returning the guns

8   would have resulted in death.  Doc. 25.  Third, the doctor who opines that Petitioner was

9   incapable of acting with criminal recklessness has never met with Petitioner to determine his

10  actual capacity.

11      Given all the evidence at trial, including that Petitioner was not "playing" with the

12  gun, but instead was fighting with the victim,[7] that Petitioner conceded that even if playing

13  with the gun, pointing it at someone would be "stupid,"[8] and Petitioner's significant efforts

14  to conceal the shooting after it occurred,[9] the Court finds that even with these affidavits it is

---

16      [6] The R&R also concluded that the affidavits were not convincing evidence because

17  they were obtained without cross-examination or the ability to assess credibility.  R&R at 26.

18  Petitioner concedes that affidavits are "weak" forms of evidence, but argues that they should

     not be discounted because Petitioner requested an evidentiary hearing that could cure these

19  deficiencies.  Doc. 53 at 9.  Though the Court agrees with both parties regarding the

     weakness of the affidavits, the Court has not discounted them due to their form.  However,

20  the Court has discounted there overall reliability because the affiants were not given the

     entire record that was available to the jury (which was entirely within Petitioner's control),

21  which could have materially changed the affiants' opinions.  Further, because what record

22  was given to the doctors was entirely within Petitioner's control, Petitioner's request for an

     evidentiary hearing to see if their opinions would be changed by the full record is denied.

23  *See* Doc. 26 at 27 (Petitioner states, "And in any event, whether the summary provided to Dr.

24  Parrish and Dr. Wellek somehow would have undermined their opinions is a question that

     should be addressed and an evidentiary hearing on Petitioner's actual innocence claim,....").

26      [7] R&R at 4.

27      [8] R&R at 26.

28      [9] R&R at 4–8.

- 7 -

not "more likely than not" that a reasonable juror would not have convicted Petitioner.  This conclusion is further supported by the fact that the jury was instructed to consider Petitioner's age in determining his culpability.  R&R at 27.  Accordingly, even if the Court reaches the merits of Petitioner's actual innocence gateway around the statute of limitations argument, Petitioner had failed to meet the actual innocence standard.  Therefore, the Petition in this case will be denied because it is barred by the statute of limitations.

**III.    Conclusion**

Based on the foregoing,

**IT IS ORDERED** that the Report and Recommendation (Doc. 50) is accepted and adopted to the extent specified above.  The objections (Doc. 53) are overruled or sustained to the extent specified above.

**IT IS FURTHER ORDERED** that the Petition in this case is denied because it is barred by the statute of limitations and the Clerk of the Court shall enter judgment accordingly.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    **IT IS FINALLY ORDERED** that pursuant to Rule 11 of the Rules Governing

2    Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a

3    certificate of appealability because dismissal of the Petition is based on a plain procedural

4    bar and jurists of reason would not find this Court's procedural ruling debatable. *See Slack*

5    *v. McDaniel*, 529 U.S. 473, 484 (2000).[10]

6    DATED this 12th day of September, 2012.

7

8

9                                          _____
                                           James A. Teilborg
10                                         United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22    _____

23        [10]  The Court notes that at page 10 of his objections, Petitioner defers making his
      objections to the R&R's recommendation that this Court deny a certificate of appealability
24    until after this Court issues an order accepting or rejecting the R&R.  However, the 2009
      amendments to the Rules Governing Section 2254 cases mandate that, "The district court
25    must issue or deny a certificate of appealability when it enters a final order adverse to the
      applicant." Rule 11(a).  Thus, to the extent Petitioner wanted to brief the issue, objecting to
26    the R&R was his opportunity.  Nonetheless, the Court did not deny the certificate of
      appealability because Petitioner did not object to the R&R on this point.  Instead, the Court
27    considered the issue de novo and reached the conclusion stated above.

28

- 9 -